Good morning, Your Honor. I'm Vince Branco, federal defenders on behalf of Mr. Estrada and Mr. Grajeda. I plan to argue the majority of the arguments and Mr. Peter Herberg is also here on behalf of Mr. Amador. He plans to use five minutes to discuss the willfulness argument he presented in his briefs. Section 245A is not categorically a crime of violence because it neither has an element of use of force nor is it an enumerated offense of aggravated assault. As this court in Fernandez-Ruiz laid the groundwork of the intent necessary to have an element of force and that intent is the intentional use of physical force against the person of another. In other words, and this is another quote from Fernandez-Ruiz, the intent, the force has to be or implies that use of force must be a means to an end. The person has to intend to use force for it to qualify within the definition of an element of use of force or even threatened use of force. California courts do not have this necessary intent element. The leading cases, as both parties seem to agree, is People v. Williams. In People v. Williams, it specifically states that a defendant who honestly believes that his act was not likely to result in a battery is still guilty of assault if a reasonable person viewing the facts known to the defendant would find that the act would directly result in assault. Let me ask you. Okay, so, you know, I read Williams is a difficult case to understand is right. The subsequent Court of Appeal opinion attempts to point, you know, points out problems with Williams. But, you know, there are a couple of statements in Williams I just kind of want to explore with you. One, it says, well, the prosecution has, the state has a burden to prove more than negligence, more than reckless conduct. It does say that. It uses the words more negligence, more than reckless conduct. It's more than. And basically what it is. What does that mean? To me, what it comes down to is generally a recklessness or a criminal negligence involves a should have known type mens rea. What the Supreme Court of California did in Williams is instead of using the word should have known, they used the test a reasonable person would have known. Well, okay, let me go on. They also say that specific intent is not required. Specific intent to inflict injury is not required. And they basically say it's a general intent crime. Correct. Okay. So is there some other level of intent in California law, mens rea, between intent and recklessness? If there is, I mean, that's one of the problems is the area, and even Williams acknowledges it, is for assault. The intent element has been confused throughout the history of California, whether or not it's general intent, specific intent. The one thing is that's where Williams imports this, well, what a reasonable person would they have known if they knew the facts that the defendant had. Now, there's a knowledge requirement, essentially, or a knowing requirement. You have to know, you have to, prosecutors have to show the defendant was aware of his acts. Yes, but the act. So that a reasonable, you know, looking at it objectively or objecting from a reasonable person would look at it and realize that the natural and probable consequences would be the harm. But again, the person does not have to subjectively believe that his conduct is going to result in a battery or that the natural and probable consequences would. They turn it to what a reasonable person would believe. So it has nothing to do with the mental state of the perpetrator. For example, and I'd like to go into two of the cases that are in one of my 28 days, and they show how far California, even after Williams, has taken this doctrine. The first one of people, the Yorba, what happened there is a person was in a high speed chase with the police officers. The person intentionally runs a red light and collides with the car. That was enough to convict that person under this reasonable person would have known standard. Meaning in Yorba, all the person had to do is intend the act of running that red light because a reasonable person would have known that the natural consequences of running a busy red light is that there would be an accident. Well, that's a traditional, reckless, negligent, mens rea standard. It's not that the person in Yorba had the intent to use force against that car that happened to come across. His intent was actually the opposite, to avoid all cars and escape the police. The other case is this people, the Armando G case. And in that case, it's a youth firing a BB gun at a tree. Well, it happens that there's someone else in the park behind the tree and they got hit. It was enough for the California courts to uphold the conviction there. Well, I guess it's a juvenile adjudication because what they found is a reasonable person knowing that there's other people in the car park would have known that the natural probable consequences of firing a BB gun is someone's going to get hit. They even go so far in Armando G to specifically... As well as Williams and Wright. If you look at them, it looks like that the defendant was aware that they were engaging in intentional conduct. Intentional conduct. But what Fernandez-Ruiz requires is that the intentional conduct, that they intend the means to the end. Meaning it's not enough just to fire a gun at a building. Or in this case, run a red light. That is intentional conduct. But what Fernandez-Ruiz says, it has to be more. They have to intentionally use force against the person of another. So it's not just the mere intentional act of doing something dangerous, which California is now upholding convictions on. It has to be intentionally using that force against the person. And in both of these cases cited, there's no evidence that the person was trying to hit with a BB gun or run into the car with the other person. Or even threatening that act. Let me ask you, let me just shift focus just for a little bit, for one moment. And that is, we have a recent case by another panel called Ortiz Magana v. Mukasey. Just came down. Correct. And the opening line of that case is we have long held that California Penal Code Section 245 is a crime of violence. Well, what it actually says is we have long held that defendants have not disputed that it was. Well, it didn't really say that. It does. It says we have held. I don't think. It didn't say we have long held that defendants don't dispute. It says we have long held. Maybe it ought to have long held because they didn't dispute. Actually, it says we have long held, and I believe the quote is. And don't dispute. Don't dispute. No, because it has not been disputed. Actually, Judge Tallman, to be accurate, I just can't believe what he says. Assault with a deadly weapon under California Penal Code Section 245A1 is a crime of violence as defined by 18 U.S.C. Section 16. Therefore, an alien convicted of that offense generally is an aggravated felon for immigration purposes. Well, first of all, Mr. Ortiz, in that case, conceded the issue. And that's clearly an opinion that he conceded that. That's consistent with it being long held. Anyway, the point is that we have binding authority from a panel that does not say, as you tried to paraphrase it, it says straight up that it's a crime of violence, period, no stop. Then later on it says, when discussing the statute, the opinion expressly does acknowledge that he does not dispute. That is, Ortiz Magana didn't dispute it. For what I have written a 28-J letter on it. We have it. And the first answer is that the definition of crime of violence that Ortiz Magana was dealing with was the aggravated felony definitions, which includes 16A and 16B. There's nowhere in the opinion that they were referencing the element of use of force when they're saying it is a crime of violence. So the definition at issue in Ortiz is different from the guideline definition. And this court has so held that in Lopez Montanez, that the definition under 2L is more restricted. Let me ask you this. You know, standing back objectively, if we were to come out with an opinion and agree with you and say that 245 is not a crime of violence for purposes of the sentencing guidelines. Correct. Would that look to, you know, practitioners out there and district court judges? We might be a little bit inconsistent with what we said in Ortiz Magana. I don't think so because no court, Ortiz Magana or any of the courts that ever relied on this, have ever had these arguments presented to them. First of all, in any of the briefings, in any case, no one's ever argued the least touching is not sufficient use of force. No one has made the argument, particularly in Ortiz Magana, that Fernandez Ruiz controls the mens rea on this. That because there is a difference in mens rea between Williams and between Fernandez Ruiz, that the statute is overly broad. I don't think it's upsetting to the extent that Ortiz Magana, Ortiz, made these statements when they weren't presented with alternative arguments. And when these comments are not essential to the holding, that... Counsel, you're not trying to claim this is dicta. Pardon? Are you trying to... Yes. It absolutely is dicta. The argument was never made. The argument was never addressed. The court had no briefing on this. In Ortiz Magana, there's even a comment that the California statute... Well, that doesn't define dicta. Yeah. Dicta is whether or not it's essential to the holding. Whether it's adequately briefed, conceded, or whatever else doesn't make it dicta. Well, yeah, but, I mean, it's not essential to the holding because what the specific question that they were asked to decide in Magana is, does aiding and abetting make a difference? And they correctly concluded that it did not. But they were never asked to address, well, is this a crime of violence to begin with? Let me ask you another question. Under Duania's Alvarez, the Supreme Court's decision... Correct. That, you know, we shouldn't speculate in hypotheticals and whatnot. Correct. You know, the cases that you went over, and if you look at the Wright case and Williams, because Williams, he shoots the gun, the... He shoots at the tire well. He shoots at the tire well, and the victim's on the other side of the car. And in Wright, it was driving the cars fairly... Close to individuals. With an attempt to frighten. You know, in the cases you went through, the BB gun and driving a vehicle, running a red light, why doesn't that basically show that, at least what we see here, that the California courts, despite this crazy mens rea standard that they seem to have adopted, why does it just show that the courts are applying this crime to violent conduct? Because, for example, in the driving through the red light, that is essentially reckless driving conduct. Okay? It's not intentional. It's not intending to threaten the vehicle that just happens to drive through the red light. It's not intentional in that respect. As far as the BB gun, they specifically say in that case, despite that he was aiming at a tree, meaning there was no intent to threaten the person behind the tree, and no intent to use force against that person. So they're not applying it consistent with Hernandez-Ruiz. Meaning this court has already held that shooting at an inhabited dwelling is not enough. Well, that's violent conduct too. But that doesn't meet Hernandez-Ruiz, just as in this case. In these cases, so should recklessly driving through an intersection or shooting a BB gun. With that, I'd like to stop and turn it over to my colleague and try to reserve some time for rebuttal. Good morning, Your Honor. May it please the Court. Peter Herbert, Federal Public Defender's Office, District of Arizona. I'm here on behalf of Ismael Amador Beltran. I would like to focus primarily on the mens rea aspect, particularly the use of the term willfully on the underlying predicate offense, which my client pled guilty to, that being a California Penal Code 245A1, assault with a deadly weapon. The present report makes reference to his having admitted to that offense willfully and unlawfully. Unlawfully, of course, goes to the nature of the conduct, not to the mindset or mens rea of the perpetrator or the defendant that's pleading guilty. So the only reference as to the mens rea in the predicate offense is the word willfully. As I've noted previously in my brief, the word willfully is apparently, although it's a part of the English language, apparently the English language has not been able to provide that word with a precise definition. It's, as noted, a, quote, notoriously slippery term, unquote. It's amenable to multiple definitions, and it can go fairly well with just about any other mens rea. You could have willfully and negligently, willfully and recklessly, willfully and intentionally. The word itself is, I guess to use an analogy, is somewhat like ketchup. It doesn't provide a meal, but it can go along with a meal. So I think that raises the critical topic of ambiguity. In other words, is there ambiguity in this scenario when one is faced with a predicate offense that the individual admitted to committing with a mindset that is not amenable to precise definition and the underlying statute contains no mens rea. As the court noted, the Williams decision in California is somewhat difficult to understand at times exactly how it defines intent. And as counsel just noted, there are examples of conduct which seem to imply recklessness. That then triggers looking into the issue of Fernandez-Ruiz, which had indicated that a conviction in Arizona for an assault with a reckless mind frame in the immigration context did not make for a crime of violence in that context. We also can look at the Safeco v. Burr decision, which is obviously a civil case. It was the Fair Credit Reporting Act, but nonetheless this court found that the term willfully seemed to be commensurate with reckless disregard of certain facts. So I think if you look at this entire panoply of events, I think I can make a logical argument that the term willfully has been construed to include or to be synonymous or commensurate with the term reckless. And if we look at Fernandez-Ruiz, a reckless or recklessly does not make a crime of violence, at least in that context. And what I believe I need to show this court is not absolute certainty that my position must prevail or that there is no other alternative position that is appropriate. I think all I need to show is that there was or there exists an ambiguity, a reasonable question, a reasonable doubt, so to speak, as to what the meaning is of the term willfully in the context of this case and whether it's sufficiently clear that that should then have triggered a sentencing enhancement of 16 levels under the advisory guidelines. And I believe that that was error for the district court to do that, and I would ask this court to remand for a resentencing with a lesser level of punishment as the option. Thank you. And I'll reserve the rest of time for counsel. Thank you. Good morning, Your Honors. May it please the Court. Mark Rahe for the United States from San Diego. And I will be arguing both of the San Diego cases. I'm also seated at counsel's table at Celeste Corlett from the District of Arizona. And the way we have agreed to divide our time, I believe I'll be spending 15 minutes, upwards of 15 minutes talking about the use, attempted use, or threatened use of force definition of a crime of violence, whereas Celeste will be handling the generic aggravated assault part of the equation. But where I would like to begin my comments is actually directed to the order that the court issued last week in talking about Ortiz-Magana. Now, Ortiz-Magana, insofar as it was decided in the immigration context and not the criminal sentencing context, is perhaps not controlling for that reason. The government would say only for that reason. And just a few other points. In Ortiz-Magana, this court reiterated, and there's already been some discussion, that there have been prior holdings. One of them is Aragon-Ion. That wasn't much. We didn't say much in Aragon-Ion. Correct. You have to read it twice to see what we're saying, that a 245 is a crime of violence. But this is the first point I make. Counsel seems to believe that just because something goes conceded or undisputed, that somehow it doesn't have presidential value. No, that's not correct. Because the court has an independent duty to evaluate that concession of the law in any event. You win on that part. Okay. You think because it's an immigration case, then that's the basis on which to distinguish it. That's what I understood you to say. Yeah, because even I, anytime, these statutes, they're fairly pervasive. There's always two bodies of law. I understood. Okay. But even aside from Ortiz-Magana, because one of the defects that, alleged defects, that defense counsel points to is that Ortiz-Magana didn't specify which prong of 18 U.S.C. 16. It was finding 245A1 to be a crime of violence. But even if you set aside Ortiz-Magana, there are two other precedents from this court which have so specified. And one of them is United States v. Romero Rendon. And that's a footnote three of that opinion. This court stated, quote, A sentencing judge could conclude that this crime qualifies as an aggravated felony, i.e., a crime that has as an element the use of physical force against the person of another. And then it cites specifically 18 U.S.C. 16A. That footnote is very carefully written. Could conclude. True. Again, though, that the modified categorical approach wasn't at issue there. But if you're looking for a basis of why these concessions should be given weight, that's at least spelling it out for you right there. Well, you know, my next question to counsel was, you know, if we were to come out with an opinion that the sentencing guidelines that 245 isn't a crime of violence, a categorical crime of violence, what would, you know, how would that be? And then you have the recent case, Magana. Is that consistent? Well, it would cause people to scratch their heads, but whatever we do with this team. It's the ninth circuit. They always do this. Taylor categorical analysis is always a bit of a headache. Obviously, this reminds me of the logic game section from the LSA. Assuming then that's not an insuperable barrier that we couldn't at least explain in this opinion as to why we've drawn the distinction. Is there any reason or any flaw in the analysis? Assume we're not. Assume we're writing on a clean slate. Isn't it fairly compelling that under Fernandez-Ruiz that this does not constitute, doesn't meet the intent, the mens rea requirement that is quite clearly established in this circuit? I respectfully disagree. No dispute that Fernandez-Ruiz stands for the principle that recklessness isn't enough. Also not disputed that the Arizona statute had issued in that case expressly had reckless in the statutory language. This isn't the case here. And three times in 30 years, the California Supreme Court has evaluated the mental state of this particular offense. And granted, they often reflect that there's uncertainty, and they keep trying to clarify, and apparently it's not working well enough. But it's important to notice in all three of those cases, People v. Rocha, 1971, People v. Colentano, 1994, and People v. Williams, 2001, what has been consistent? This. In each of those cases, the California Supreme Court has said recklessness is not enough. And in fact, People v. Rocha even has a hypothetical at footnote 5. That's 3 Cal 3rd 898 at footnote 5. They give us a, they're talking about 245A2, which, after the fact that it applies to firearms, incorporates the same definition of assault in the statute issue. Here's a quote. A person who recklessly exhibits a weapon in a threatening manner, which accidentally discharged injuring another, does not commit an assault with a deadly weapon. That's one example, a very concrete example of how recklessness isn't enough. And then in Colentano, 7 Cal 4th at page 214, defendant must, quote, intentionally engage in conduct that will likely produce injurious consequences, end quote. Later on that same page, the court says the defendant must act purposefully. And this language resonates. Act purposefully. Purposefully. Well, that may be true. The question is do they act purposefully toward the victim? Well, in that case, I would bring up this President of the United States v. Bolanos Hernandez. What about the case, I don't have Colono in front of me. Well, I do, but I haven't got to it yet. Did that involve intentional use against the victim? I believe it did, Your Honor. Your Honor, if I could be. They definitely, the court, I believe this was the case involving a domestic dispute. But there was, oh, yeah, this was a gang case. There were basically four young men involved, and one brought a firearm to the scene of the incident. He had bullets, extra bullets, in his pocket, and he pointed the gun at the victim. But even aside from Colon Tano, in Williams, the court makes clear again, reckless conduct, negligent conduct is not enough. But the reason that I brought up Bolanos Hernandez, Your Honor. Yeah, but the problem with Williams, though, is they go on to clarify that it's this objective test. Which maybe sounds odd at first blush, but here's my answer. Odd at first blush? I mean, as Wright goes through and points out what's wrong with what, why the court just doesn't want to adopt an intent standard is beyond Justice Bleeze's understanding of the whole situation. Here, I would respond with this, Your Honor. It's actually long been settled, even in this circuit, as a matter of federal common law, that, and for purposes of criminal law, that somebody can be held to intent the natural and probable consequences of their voluntary acts. This language doesn't just come out of left field, and it isn't limited only to California. In fact, the most recent case out of this circuit, United States v. Garcia Camacho, 122F3rd at page 1268, held as much. I think one of the things is defense wants to, you know, you hear, yes, you hear natural and probable consequences. It may sound like the language of negligence. But again, Williams couldn't be any clearer within two sentences, either direction of that quote, that negligence is not enough. And so when you look at that body of law and then compare it, again, in the Ninth Circuit, Garcia Camacho cites cases that go back 20 or 30 years. This is a longstanding principle of criminal law. If I intend a voluntary act, I can be held liable for the natural and probable consequences. Even if it's to somebody who's an accidental victim? Well, I think that would be, that's the dispute. I mean, if a trier of fact finds that it, that it hits that victim, then you have a finding in front of you that you would have to review for clear error that it wasn't just an accidental, meaning completely random. It was, in fact, a natural and probable case. What about the cases that counsel cited, running the red light, the BB gun? What about those? Somebody intentionally, there's no question in that first case that that person who's fleeing from the police intended to run the red light. Yeah. If that's the intentional conduct, I don't think anybody. Conduct. Right. I don't think anybody can dispute, though, that a natural and probable consequence of that is that a collision will occur. So, again, if I intend to drive, and, again, Garcia Camacho, Ninth Circuit law would not come out any differently in this respect. If I intentionally move that vehicle into the intersection at a red light, I'm going to be held liable for the natural and probable consequences, even under a specific intent crime. And the other case that he talks about, I believe the Armando, I might be getting the names mixed up, the one with the BB gun, the selective quotation of the facts in counsel's 28-J letter, if you look at that case, there was evidence from a testifying officer at the scene that the defendant admitted that he shot the victim. So when you get to that part of the opinion where it talks about there was enough evidence, even if he was aiming at the tree, I think that even if he was aiming at the tree part is an embellishment or flourish. In that case, you have evidence from which the trier of fact could find intentional conduct. So taking Judge Fisher's example earlier about if we were writing on a clean slate, from the government's perspective, and in light of Fernandez-Ruiz and Leocal, what's your analysis, and in light of the California Supreme Court decisions, and Williams in particular, because that's the most recent statement that puts their law in perspective that we need to look to, what's your, why does this comply with Fernandez-Ruiz? Because I'd say what do we do then? We look to the plain language of the statute. This statute applies to somebody who commits an assault upon another person with deadly weapon or force likely to reach great bodily injury. Then look to the California jury instruction, CALJIC 9.0, and this actually goes to Mr. Herbert's argument. There's no debate on what willfulness means in the context of this crime. That jury instruction expressly says that willfulness means intentional conduct. And I would say based on that simple fact alone, and then the Belano-Fernandez case, that was the case I was trying to mention a few minutes ago, this Court held, it looked at that exact definition, CALJIC 9.00. It looked at the three elements of assault, the exact same ones that are at issue here. It said every single one of those, it contemplates application of force on a person. Not that it might happen to some, you know, indirect, attenuated thing, but, no, that it required a direct application of force. So I'd say looking at the plain language of the statute, the jury instruction, and that Belano-Fernandez case, there's definitely enough to find that this meets that threshold. And, again, Fernandez-Ruiz, this point can't be made clearly enough. That Arizona statute had the word recklessly in it, so there couldn't have been any dispute about that. That may be, but, see, I'm looking at Fernandez-Ruiz, and it says, the teachings of Leo Cals, this is 1129, the court not only endorsed the position that crimes of violence must be volitional, but also repeatedly emphasized that such crimes cannot be, quote, accidental. Accidental means not having occurred as a result of anyone's purposeful act. Purposeful means done with a specific purpose in mind, deliberate. Reckless conduct, as generally defined, is not purposeful. Defining, signing, Black's Law, I forget what it is, his cite is two, but in any event, defining recklessness as conduct whereby the actor does not desire harmful consequence, but nonetheless foresees the possibility and consciously takes the risk. Even more clearly, reckless conduct as defined by Arizona law is not purposeful. That's more clear, but he's still saying recklessness. And then at the bottom of 1130, it says, but the subjective awareness of possible injury is not the same as the intentional use of physical force against the person of another. Neither gross negligence in failing to perceive nor conscious disregard of a substantial and unjustifiable risk of injury implies that physical force is instrumental to carrying out the crime, such as the plain meaning of the word use denotes. See, Leo Cow. Now, you said the red light and the BB gun are the natural and probable consequences. That satisfies specific intent. How do you reconcile natural and probable consequence with the language of Fernandez-Ruiz? I think that language of Fernandez-Ruiz is talking about recklessness. It's not encompassed by these cases because here you still have to have an intentional act. Well, of course there's an intentional act. Otherwise, you don't have some conduct. The act is undertaken purposefully, as the case says, but it has to be with a purpose in mind. That's the next step. That's the mental intent. Well, I'd say again, but even California. Running a red light in the case was a purposeful act. Shooting a BB gun at a tree was a purposeful act, right? Correct. Okay, but under the language I just went through from Fernandez-Ruiz, counsel, I'm having real trouble saying that somehow we can get around that. Well, a couple things again. First of all, the BB gun with the tree case, as I pointed out, the facts on that that counsel neglected to mention was that the defendant admitted to an arresting officer that he shot somebody. Shot intentionally or that he did it although he was aiming at a tree? Well, he said that at trial, but he admitted at the time that he shot somebody, and that opinion says that the trial fact could infer from that the kind of intentional conduct that we're talking about. Right. Well, okay, that's fine. That's consistent with what we're saying. In other words, if the jury inferred, however, that he only shot at a tree, that wouldn't count. Well, that's the part I would say of the opinion that's dictated because they didn't have to reach those facts. Look, Your Honor, I'll also say this. It's confusing enough with that. I'm going to come back to the Supreme Court on this one, too, because, you know what, even if you take these couple of outlined cases, I think we have to. Don't threaten us with certiorari. No, not that. I mean United States v. James and Duaneus Alvarez. Duaneus Alvarez. I understand we can't hypothesize. That's why I'm looking at real cases. But that's half the equation. United States v. James says you look at the ordinary case, and even in Duaneus Alvarez the defense cited three cases, and the issue there was whether California aiding and abetting was somehow broader. The Supreme Court said even if these three cases are broader, they don't extend the concept significantly beyond the generic definition. We're looking at the elements as articulated by the California Supreme Court and as applied in practice in their cases. But I'm saying, you know, the ordinary case, if this is the best we can get, two unpublished cases plus Wright, which, as we point out in our letter, has not been followed and, in fact, has been criticized, even if you assume that those three cases don't match up with the view of the law that you quoted from Fernandez-Reeves, it's still not enough to find against the government. And the last thing I'd say before turning it over, United States v. O'Neill, 937 F. 2nd and 1375, that's another case where this court held that this particular statute met 18 U.S.C. 16A. And, again, if you talk about going back to a clean slate, at least from, you know, ignoring Ortiz Magana, that's a case that's over 15 years old. That's stare decisis. That's the kind of case that the defense needs to convince you was wrong and decided for you to hold against us. But I'm sorry I took you an extra minute. I'm going to give mine. That's fine. Good morning. May it please the Court, Celeste Corlett, Assistant United States Attorney from the District of Arizona, here on behalf of the United States. This court does not even have to deal with the issue of the use of force. Oh, good. Why didn't you speak first? Because this California statute of aggravated assault is one of the specific enumerated offenses in this guideline. And as the district court stated in his ruling, if this is not a crime of violence, there are no crimes of violence. The Fifth Circuit in Sanchez-Ruiz did this analysis using the generic contemporary meaning, as this court would do also, and found that this is an aggravated assault under the enumerated offenses. California courts also have held this out as their aggravated assault offense. And also the leading treatises support that this California statute is an aggravated assault. LaFave had described that all jurisdictions, their statutes punish more severely than simple assault, aggravated assault, for example, assaults with a dangerous weapon. In Amjur, assault may be aggravated by means used for its perpetration. The California statute is one of the enumerated offenses, and it's using the generic contemporary meaning, and this court should find an- Which is the enumerated, which enumerated offense? The aggravated assault. Aggravated assault. Just briefly, I'd like to address some of the issues that defense counsel in Grajeda brought up as to why this does not fall under the contemporary generic meaning. Perhaps I should ask the court, does the court have any specific concerns regarding defense counsel's claims that this does not fall under the generic contemporary definition of aggravated assault? Well, not to leap the mind, I looked at this as a backup argument, but yours. Well, Your Honor, I'd just like to point out one specific- Does Fernandez-Ruiz apply the same intent requirement to the listed? No, Your Honor. Actually, Fernandez-Ruiz dealt with just that issue of the use of force. It was just that clause of that particular guideline. So Fernandez-Ruiz only applies to that particular part of the clause. It does not apply to the specific offenses or the enumerated offenses that are listed in that part of the statute. So Fernandez-Ruiz doesn't even apply. And that's exactly what the district court had found in our case, was that it doesn't apply because this is a use of force issue. This is not a use of force issue. This is an enumerated offense. I'm sorry, you're on- which of the three cases are you-? I'm on Amadora-Baton. That's what I thought. Okay. And just real briefly, Your Honor, the defense counsel had brought up in Grajeda something about the majority of the states view his definition of aggravated assault as a generic- and that should support that it's generic contemporary. Even if you assume that his facts are correct and the government's not conceding that they are, he's actually only saying that there are 13 states that agree with his definition, his contemporary generic definition of aggravated assault. And the government asks you not to take that small slice of states and only apply the numerated offense of aggravated assault for only that small slice of states. But instead we should look at Fave, as I cited in my 28-J letter, their description of aggravated assault. Also, as I said, the Fifth Circuit and in their analysis of how they came to the generic contemporary meaning of aggravated assault, we ask the Court to follow those definitions of the generic contemporary aggravated assault and find that this is one of the specifically enumerated offenses and that California's definition of aggravated assault does apply. Okay. Thank you, Your Honor. Just to clarify the direct quote of Ortiz Magana that we've been talking about, it says, We have repeatedly held that quotation mark. It is undisputed that an assault with a deadly weapon is included in the amended definition of aggravated felony. And I do think Ortiz was suggesting that the concession was critical to its holding because in the next paragraph, and this is in the Westlaw site, Start 5, under, I think, in paragraph A, the last paragraph says, As a result, because it is conceded that a conviction under 245A is a crime of violence, and then goes on to its actual holding. So the concession was relevant to its holding. Moving on, regarding the, He shot the victim from Armando G. That is exactly what the case said, that there was a statement that the defendant admitted, I shot the victim. It wasn't, I intended to shoot the victim or anything like that. And the circumstances of the case shows that, I mean, after he aimed at the tree, he could have seen that he shot the victim. Turning to the aggravated assault alternative that the government's offering, this court need to go no further to find a generic definition of aggravated assault than the guidelines themselves. In 2A, 2.2, Application Note 2, or Application Note 1, specifically defines the crime of aggravated assault, and it says, It means a felonious assault that involved, A, a dangerous weapon with intent to cause bodily injury, i.e., not merely to frighten with that weapon, serious bodily injury, or an intent to commit another felony. So how the guidelines themselves is interpreted is, One, there either has to be an intent to actually inflict harm with that weapon, or actual injury needs to result. And this definition is consistent with pretty much every other definition. Watts Law Dictionary, the Model Penal Code, the Uniform Crime Reporting Act, all of them require either actual injury, or a specific intent or purpose to cause the injury, for an offense to be an aggravated assault. Other than a brief discussion of the Model Penal Code, the Fifth Circuit never addressed any of these issues on how there is this significant, even the guidelines themselves are saying, there must either be bodily injury or a specific intent. I see that my time is up. It is. We appreciate the argument. These are challenging cases. All the reasons have been articulated here and in the briefs, and they are submitted. Thank you, Counsel.
judges: Fisher, Paez, Robart